UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**WILLIAM DOUGLAS CARROLL**                         **CASE NO. 08-10756**
**CAROLYN CARROLL**

DEBTORS                                              CHAPTER 7

---

IN RE:

**REDPEN PROPERTIES, LLC**                          **CASE NO. 08-10933**

DEBTOR                                               CHAPTER 7

## MEMORANDUM OPINION

William and Carolyn Carroll filed chapter 13 on May 21, 2008, but within three months had their case converted to a chapter 7 liquidation.  RedPen Properties, L.L.C. ("RedPen"), a Louisiana limited liability company whose only members are Mr. and Mrs. Carroll, filed chapter 7 on July 2, 2008.

Samera L. Abide, chapter 7 trustee for both bankruptcy estates, moved to substantively consolidate the two estates.  The Carrolls alone oppose consolidation.

The records of the two cases and the evidence support substantive consolidation.

### Facts

*The Carrolls Formed RedPen to Protect their Property from Creditors*

Carolyn Carroll admitted in an August 3, 2010 deposition taken during adversary proceedings the Carrolls' daughters filed in this court that she and her husband formed RedPen

intending to give the company all their assets to protect the property from creditors.[1]  Thus, from almost the moment RedPen came into existence on May 29, 2002, the Carrolls began transferring their immovable and movable assets to it in exchange for ownership interests in the company.  In fact, that very day the Carrolls transferred [2] their residence (a house and seven acres of immovable property in Ascension Parish) to RedPen in exchange for 10,000 ownership units[3] in the company.  Only one month later the Carrolls transferred the rest of their property to RedPen,[4] briefly retaining only a five acre tract in Ascension Parish against which BankOne had started foreclosure proceedings.  They later transferred that land to RedPen after paying the balance owed to the mortgage creditor, taking in exchange one more unit of membership in the limited liability company. [5]

Over time, RedPen's and Carroll family members' transactions involving the five and seven acre Ascension Parish tracts furthered the Carrolls' scheme to use RedPen to shield their

---

[1]  Deposition of Carolyn Carroll, August 3, 2010 in Adv. No. 09-1096/09-1097, p. 36, ll. 12-25.  Bank One (later JP Morgan Chase Bank) sued the Carrolls in May 2002 to collect on a line of credit the bank extended to Charis Partial Hospital, Inc. that the Carrolls had guarantied.

[2]  May 29, 2002 Act of Exchange (P-11), Exhibit 9 in Case No. 08-10756.

[3]  According to the RedPen Operating Agreement, the 10,000 units comprised 100% of the ownership interests in RedPen.  Operating Agreement of RedPen Properties, L.L.C, Art.6.5, P-74, pp. 15-31 in the record of *Alonso, et al. v. Abide*, Civil Action No. 11-702 in the United States District Court for the Middle District of Louisiana.  The civil action began as two adversary proceedings filed in this court, Adv. No. 09-1096 and Adv. No. 09-1097.  They were later consolidated and the United States District Court withdrew the reference of the proceedings on December 15, 2011 (P-8 in Civil Action No. 11-702).  The court takes judicial notice of the record of the district court case.  *See Antioch Co. Litigation Trust v. Hardman*, 438 B.R. 598, 610 (S.D. Ohio 2010), *quoting Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d, 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.")

[4]  Four separate Acts of Exchange dated June 20, 2002 (P-74), pp. 88-102, in Civil Action No. 11-702.  The various Acts of Exchange transferred to RedPen all the Carrolls' "antiques and collectibles," automobiles, a motorcycle, an airplane and the property at 40228 Ronda Avenue, Prairieville, Louisiana, for a total of 10,000 additional ownership units in the company.

[5]  September 12, 2002 Act of Exchange (P-74), pp. 103-107 in Civil Action No. 11-702.  The RedPen operating agreement was amended on June 20, 2002 to provide that 20,000 units represented 100% ownership in the company.  Amended Operating Agreement of RedPen Properties, L.L.C., Art. 6-5 (P-74), pp. 32-51 in Civil Action No. 11-702.

assets.  First RedPen transferred all of its interest in the Ascension properties to William Carroll, III, the Carrolls' adult son, in January 2006.[6]  A few months later William Carroll, III borrowed $50,000 from Central Progressive Bank using the 5-acre tract as collateral,[7] and on the same day deposited the loan proceeds into RedPen's checking account.  Those funds were accessible to the Carrolls, who used them to defray personal expenses.[8]

RedPen's land transfers continued after JP Morgan Chase Bank ("Chase") obtained a judgment in state court litigation against the Carrolls.[9]  Immediately before the sheriff's sale of the Carroll residence, William Carroll, III caused to be recorded in the public record a September 26, 2007 quitclaim deed that re-transferred his interest in the Carroll residence to RedPen.[10]  A second, separate May 20, 2008 quitclaim deed recorded on May 21, 2008[11] transferred the residence from RedPen to the Carrolls, who filed their bankruptcy the very next day – May 21, 2008 – which stayed the sheriff's sale.  By still another quitclaim deed dated September 26, 2007 (but not recorded until July 2, 2008), William Carroll, III re-transferred to

---

[6]  Quitclaim Deed from RedPen to William Carroll, III, dated January 3, 2006 but recorded in Ascension Parish on May 2, 2006, P-11, Exhibit 15 in Case No. 08-10756.  RedPen borrowed $500,000 from American Gateway Bank in July 2004, securing it with a mortgage on the 5-acre and 7-acre tracts.  That mortgage was recorded July 19, 2004. July 16, 2004 Collateral Mortgage, P-11, Exhibit 12 in Case No. 08-10756.

[7]  Mulitple Indebtedness Mortgage by William Carroll in favor of Central Progressive Bank recorded on May 2, 2006, P-11, Exhibit 18 in Case No. 08-10756.

[8]  The Hibernia Bank statement for RedPen Properties for the period from May 1 through May 31, 2006 reflects a deposit of $30,230.51 on May 2, 2006.  Exhibit T-9, p. 45 offered at the August 6, 2014 hearing on the motions. Funds from the account were paid during May 2006 and in the fifteen ensuing months to Southern Pine Electric Power Association (a Mississippi electricity distribution cooperative), Benny's Car Wash, Direct TV, Chevron, Alltel and Walmart, among others.

[9]  October 2, 2007 judgment in favor of Chase and against the Carrolls for $671,015.16, P-11, Exhibit 1 in Case No. 08-10756.

[10]  September 26, 2007 Quitclaim Deed from William Carroll, III to RedPen recorded on May 20, 2008, Exhibit 6 admitted at the August 22, 2008 hearing on JP Morgan Chase's Motion to Lift Stay or Convert to Chapter 7.

[11]  May 20, 2008 Quitclaim Deed from RedPen to the Carrolls recorded May 21, 2008, Exhibit 7 at the August 22, 2008 hearing on JP Morgan Chase's Motion to Lift Stay or Convert to Chapter 7.

RedPen the 5-acre tract it had conveyed to him in January 2006.[12]  RedPen filed chapter 7 on July 2, 2008, staying the Carrolls' creditors' actions against that property.

The May 20, 2008 quitclaim deed was executed without RedPen's authority; and the stated consideration for the 2006, 2007 and 2008 transfers between and among William Carroll, III, RedPen and the Carrolls was a mere $10.00.  The Carrolls and RedPen have offered no evidence in either the Carrolls' or RedPen's bankruptcy cases that William Carroll, III or RedPen, ever displayed any indicia of ownership over the Carroll residential property or the 5-acre tract. Rather, even after the Carrolls transferred their residence to RedPen on May 29, 2002, they continued to occupy the property.[13]  The evidence established that the Carrolls, as the sole members of RedPen, treated the company's assets as their own.

### The Carrolls Never Treated RedPen as a Separate Entity

The trustee's evidence established beyond doubt the Carrolls' utter disregard of the separate corporate identity of RedPen:

(1) The Carrolls have owned all the membership interests in RedPen since its formation, excepting only a purported partial transfer in June 2005 from the Carrolls to their daughters, Pamela Alonso and Cynthia O'Neill.[14]

---

[12]  September 26, 2007 Quitclaim Deed from William Carroll, III to RedPen recorded July 2, 2008, Exhibit 8 admitted at the August 22, 2008 hearing in this case on JP Morgan Chase's Motion to Lift Stay or Convert to Chapter 7.

[13] Transcript of trial testimony of Carolyn Carroll, August 22, 2008, p. 28, ll. 15-19, p. 29, ll. 21-22.  The transcript is P-165 in Case No. 08-10756 and Exhibit T-2 (partial transcript) offered at the August 6, 2014 hearing.

[14]  In Civil Action No. 11-702, the United States District Court concluded that this transfer, as well as the purported transfer of the movables to RedPen in 2002 (attempted by means of a 2005 Donation Inter Vivos and Act of Exchange), were invalid simulations and that the RedPen company interests and the movables are property of the estates of debtors William and Carolyn Carroll and RedPen.  June 27, 2013 Ruling and Judgment, P-141, P-142. The United States Court of Appeals for the Fifth Circuit affirmed the district court judgment in *O'Neal v. Abide*, 568 Fed.Appx. 338 (5th Cir. 2014).

(2) RedPen has never engaged in business or had any income, or paid or collected any rent, despite the Carrolls' occupancy for several years of property that RedPen claimed to own.[15]

(3) RedPen's federal income tax returns for the years 2002 through 2007 (the tax years before it filed bankruptcy) show that the company had no gross receipts or sales or any other income.[16]  The principal expenses listed on the returns are for "repair and maintenance," "taxes and licenses" and non-cash depreciation; all associated with the immovable and movable property the Carrolls transferred to RedPen.[17]

(4) RedPen did not follow corporate formalities to obtain authority for its May 2008 transfer of the residence to the Carrolls.

(5) RedPen also maintained few corporate or business records: specifically, it kept only bank statements and tax returns.[18]

(6) The evidence supports an inference that the Carrolls used RedPen's bank accounts exclusively for personal purposes and not for RedPen, which did not conduct any business.

*The Carroll and RedPen Bankruptcy Cases Feature Commingled Assets and Shared Creditors*

Apart from the Carrolls' use of RedPen as a shield against creditors and its casual disregard of corporate formalities, the record of the bankruptcy cases support consolidating the Carroll and RedPen estates.

---

[15]  Transcript of trial testimony of Carolyn Carroll, August 22, 2008, p. 24, l. 23-25, p. 25, ll. 10-16, P-165 in Case No. 08-10756.

[16]  RedPen tax returns, Exhibits T-3 through T-8 offered at the August 6, 2014 hearing.

[17]  Transcript of  trial testimony of Carolyn Carroll, August 22, 2008, p. 67, ll. 8-25, p. 68, line 1, P-165 in Case No. 08-10756.

[18]  Exhibits T-3 through T-9 offered at the August 6, 2014 hearing.

The Carrolls at first scheduled among their assets their residence, clothing, personal jewelry and a car. Their schedule B, signed under penalty of perjury, recited that they owned no household goods or furnishings. Consistent with this representation, they claimed exemptions only for their immovable property, clothing, jewelry and automobile.[19]

RedPen's original schedules list among its assets the 5-acre tract of land, an M-35 Bonanza airplane and $8,000 in household goods and furnishings,[20] comprising the very same movables RedPen purported to transfer to the Carrolls' daughters in 2005.[21] When the Carrolls amended their schedules in September 2011, for the first time they included among their possessions $8,000 in household goods and furnishings, claiming them as exempt.[22] These are the "movables" the district court's June 2013 ruling concluded were the property of the estates of the "debtors."[23] The Carroll residence, the 5-acre tract of land and the airplane have been sold: the only remaining valuable assets of either bankruptcy estate are the movables.

The claims registers for the Carroll and RedPen bankruptcy cases reveal that the creditors *entitled to distribution* in RedPen are also creditors of the Carroll bankruptcy estate.[24] Specifically, the Carroll claims register includes timely claims filed by:

> Regions Bank
> B-Real, LLC

---

[19]  Schedules A, B and C, P-16 in Case No. 08-10756.

[20]  Schedules A and B, P-23 in Case No. 08-10933.

[21]  See footnote 14, above. The United States District Court's June 28, 2013 ruling voided this purported transfer as a simulation.

[22]  Amended schedules B and C, P-256 in Case No. 08-10756. The question of whether any of the household movables are exempt is the subject of a hearing set for November 3, 2014.

[23]  June 28, 2013 Ruling, P-141, p. 32, Civil Action No. 11-702. The district court did not assign ownership of any specific piece of movable property to either debtor.

[24]  In a chapter 7 case, a creditor must file a proof of claim for the claim to be allowed and paid. 11 U.S.C. §726(a); Fed. R. Bankr. P. 3002(a).

Internal Revenue Service
JP Morgan Chase (paid when the bankruptcy court approved the trustee's sale of the Carroll residence[25])
Louisiana Department of Revenue
Dr. Lance Bullock
eCAST Settlement Corporation
United States Department of Education
LVNV Funding
Preis Gordon law firm
Office of the United States Trustee

Only three scheduled creditors filed timely proofs of claim in the RedPen case:

Internal Revenue Service
Preis Gordon law firm
Central Progressive Bank (which was paid in full at the sale of the 5-acre tract of land.)[26]

Therefore, the only remaining claims entitled to distribution in the RedPen case are held by the IRS (much of which is secured by a lien the remaining assets) and Preis Gordon,[27] two creditors that also are creditors of the Carroll estate.

### Analysis

*The Propriety of Substantive Consolidation Turns on Specific Facts*

Substantive consolidation "occurs when the assets and liabilities of separate and distinct legal entities are combined in a single pool and treated as if they belong to one entity." *In re Babcock & Wilcox Co.*, 250 F.3d 955, 959 fn.5 (5th Cir. 2001).  Bankruptcy court authority to substantively consolidate two bankruptcy cases lies in 11 U.S.C. §105(a), providing in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Supreme Court long ago recognized that consolidation of related bankruptcy estates is a tool vital to fulfilling a fundamental purpose of

---

[25] August 26, 2011 Order on Trustee's Motion for Sale Free and Clear, P-253 in Case No. 08-10756.

[26] February 19, 2010 Order on Trustee's Motion to Sell Property to Third Party Free and Clear and to Pay Secured Creditors, P-285 in the record of case number 08-10933.

[27] In fact, Preis Gordon filed a claim for the same amount – $158,130 – in both cases.

bankruptcy. *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). The Fifth Circuit has acknowledged that bankruptcy courts have authority to order substantive consolidation. *In re S.I. Acquisition Inc.,* 817 F.2d 1142, 1145 fn.2 (5th Cir.1987) (bankruptcy courts may *de facto* disregard the corporate form through consolidation proceedings).

Determining whether substantive consolidation is appropriate requires fact-specific analysis. *In re Introgen Therapeutics, Inc.*, 429 B.R. 570, 582 (Bankr. W.D. Tex. 2010), citing *In re Permian Producers Drilling, Inc.,* 263 B.R. 510, 517 (W.D. Tex. 2000); *In re Coleman,* 417 B.R. 712, 726 (Bankr. S.D. Miss. 2009) (discussing the preference for case-by-case analysis). Accordingly, courts have developed two distinct tests for applying the remedy: one, a factor-based test and the second, a balancing test.

Courts employing the traditional factor-based test consider several factors to determine the propriety of substantive consolidation. Most commonly they include:

> (1) the degree of difficulty in segregating and ascertaining individual assets and liability;
>
> (2) the presence or absence of consolidated financial statements;
>
> (3) the profitability of consolidation at a single physical location;
>
> (4) the commingling of assets and business functions;
>
> (5) the unity of interests and ownership between the various corporate entities;
>
> (6) the existence of parent and inter-corporate guarantees on loans; and
>
> (7) the transfer of assets without formal observance of corporate formalities.

*Permian Producers,* 263 B.R. at 518, *quoting In re Vecco Constr. Indus., Inc.,* 4 B.R. 407, 410 (Bankr. E.D. Va. 1980). *See also In re Drexel Burnham Lambert Group Inc.,* 138 B.R. 723, 764

(Bankr. S.D.N.Y. 1992);  *In re Owens Corning,* 419 F.3d 195, 211 (3d Cir. 2005) (articulating principles courts should consider when engaging in substantive consolidation analysis).

The second, or balancing, test weighs the effect of consolidating the cases on creditors against the benefits of consolidation.  *Permian Producers,* 263 B.R. at 518, citing *In re Snider Bros.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982).  The Second Circuit's balancing test considers two critical factors: "(i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit …'; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."  *In re Augie/Restivo Baking Co.,* 860 F.2d 515, 519 (2d Cir. 1988) (internal citations omitted).

*The Evidence Supports Substantive Consolidation of the Carroll and RedPen Estates*

The traditional test factors support the finding and conclusion that the Carrolls' assets and liabilities are virtually the same as those of RedPen.

First, the transfers, attempted transfers and purported transfers between the Carrolls and RedPen, along with a dearth of financial records for RedPen, make it difficult to ascertain with reasonable certainty the assets and liabilities of each of the two bankruptcy estates.  Substantive consolidation will moot the need to establish ownership, as between the Carroll and RedPen bankruptcy estates, of property the debtors purportedly transferred to their daughters, an issue that the district court's ruling leaves unresolved.

No evidence supported a finding that RedPen carried on any business functions unrelated to its transactions at the Carrolls' behest or for their benefit.  The trustee proved that the Carrolls and RedPen observed no corporate formalities in RedPen's May 20, 2008 transfer of the Carrolls' residence to William and Carolyn Carroll.  Rather, the evidence established that the Carrolls, as

RedPen's sole owners, never separated RedPen's interests from their own because they intended, as Carolyn Carroll admitted, to use RedPen to shield their own assets from creditors.

The remaining factors – presence or absence of consolidated financial statements, profitability of consolidation at a single physical location and existence of parent and inter-company loan guarantees – are not relevant to this case.  RedPen has no financial statements, there is no difference in physical location between the debtors and there is no credible evidence that the Carrolls and RedPen made loans to each other.

The balancing test also supports substantive consolidation.  Abundant evidence established that the "affairs of the debtors are so entangled," *Augie/Restivo Baking, above,* that substantive consolidation serves the best interests of the remaining creditors by simplifying the trustee's sale of assets and distribution of proceeds.  Consolidated estates will also avoid duplication of the trustee's expenses in administering two estates.  The potential benefits of consolidating the debtors' cases to facilitate orderly administration outweigh any adverse effect of consolidation on the creditors – none of whom have objected to consolidation.[28]

### Conclusion

Because substantive consolidation is beneficial to the remaining creditors of the Carroll and RedPen estates, the court will order the estates substantively consolidated.

Baton Rouge, Louisiana, October 31, 2014.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[28]  The Carrolls alone objected to substantive consolidation.  They lack standing: the estate will not generate sufficient funds to pay all claims and result in a return of any funds to the debtors.  *See* 11 U.S.C. §726(a)(2)(6).