UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**WILLIAM DOUGLAS CARROLL**                     **CASE NO. 08-10756**
**CAROLYN CARROLL**

DEBTORS                                          CHAPTER 7

SUBSTANTIVELY CONSOLIDATED WITH

IN RE:

**REDPEN PROPERTIES, LLC**                       **CASE NO. 08-10933**

DEBTOR                                           CHAPTER 7

**MEMORANDUM OPINION**

Trustee Samera L. Abide seeks a declaration that debtors William and Carolyn Carroll

and their daughters Pamela Alonso and Cynthia O'Neal (collectively Respondents)[1] are vexatious

litigants and an order under 28 U.S.C. §1651 and 11 U.S.C. §105 barring them from seeking

relief against her individually and as trustee of these consolidated estates in any judicial or non-

judicial forum and for attorney's fees she has incurred responding to their attacks.  The trustee's

request is granted in part.

---

[1]  Alonso and O'Neal are the debtors' adult daughters and plaintiffs in two consolidated adversary proceedings, Adv.
Nos. 09-1096 and 09-1097.  The district court withdrew the reference in these cases on December 15, 2011 (P-9,
"Alonso et al. v. Abide, et al.," Civil Action No. 11-CV-00702, United States District Court for the Middle District
of Louisiana).

## Facts and Procedural History

The Carrolls have spent nearly fifteen years scheming to retain assets and rebuff creditors through several bankruptcy cases they filed for themselves and entities they controlled.[2]  They also have waged war against creditors and the trustee in several forums for nearly as long.[3]  Although they have in most of these proceedings acted as their own lawyers, occasionally with the assistance of unidentified ghost writers, they don't merit treatment as misguided *pro se* litigants.  Rather, their campaign against the trustee is another of the debtors' and their family's strategies to try to put the value of their bankruptcy estate's property beyond the reach of their creditors that has depleted the value of a bankruptcy estate that otherwise may have been realized to satisfy the Carrolls' nondischargeable debts, among other claims.

The Carrolls filed this case on May 21, 2008.  Within three months, the chapter 13 case converted first to chapter 11 and then to a chapter 7 liquidation.  The ensuing months and years saw their relentless and invariably unsuccessful attempts to prevent creditors from reaching their assets through an astounding number of unnecessary filings – many of them duplicative – both in this court and also the United States District Court for the Middle District of Louisiana.  Where the Respondents failed in their relentless efforts to prevent the trustee from performing her statutory duties, they often resorted to personal attacks on the trustee to achieve their objectives.

The number of the Respondents' frivolous filings is legion; this opinion merely recounts the highlights of their campaign.

---

[2]  The court previously detailed the Carrolls' many bankruptcy filings in *In re Carroll*, 2015 WL 1519272 (Bankr. M.D. La. March 30, 2015).

[3]  The debtors' many lawsuits are detailed in the same reported opinion.

*Cases Filed by Carrolls, Alonso and/or O'Neal From 2008 Forward*

At the hearing on this motion, the court took judicial notice[4] of numerous cases and case records:

| Case No. | Court | Caption |
|----------|-------|---------|
| 08-10756 | USBC, MD of LA | In re: William D. Carroll, Jr. and Carolyn Carroll ("Carroll Bankruptcy Case") |
| 08-10933 | USBC, MD of LA | In re: RedPen Properties, LLC ("RedPen Bankruptcy Case")[5] |
| 08-cv-00673 | USDC, MD of LA | Carroll, et al. v. JP Morgan Chase Bank (appeal of conversion order) |
| 08-cv-00728 | USDC, MD of LA | Carroll v. JP Morgan Chase Bank, N.A. (removal of state court litigation regarding Bank One) |
| 08-cv-00788 | USDC, MD of LA | RedPen Properties, LLC, et al. v. Abide (appeal of sale order for 5 acre Ascension Parish tract) |
| 08-1110 | USBC, MD of LA | Carroll et al. v. JP Morgan Chase Bank |
| 08-1132 | USBC, MD of LA | Carroll et al. v. Bank One |
| 09-cv-00120 | USDC, MD of LA | Carroll, et al. v. USA, et al. (complaint against IRS, et al.) |

---

[4]  October 28, 2015 Minute Entry.

[5]  Over the Carrolls' predictable objection, the court consolidated Case Nos. 08-10756 and 08-10933 on October 31, 2014 (P-611 Memorandum Opinion and P-614 Order in the record of Case No. 08-10756).

| Case No. | Court | Caption |
|---|---|---|
| 11-cv-00368 | USDC, MD of LA | Carroll, et al. v. Abide, et al. (appeal of denial of motion to remove trustee) |
| 11-cv-00437 | USDC, MD of LA | Carroll, et al. v. Abide, et al. (appeal of order compelling debtors to turn over and vacate residence property) |
| 11-cv-00684 | USDC, MD of LA | Carroll, et al. v. Chase Bank, et al. (appeal of sale order on residence) |
| 11-cv-00702 (originally filed as Adv. No. 09-1096, 1097 in USBC, MD of LA) | USDC, MD of LA | Alonso and O'Neal v. Abide et al. (complaint to have movable property of estate declared property of Alonso and O'Neal, "Movables Adversary") |
| 12-cv-00637 | USDC, MD of LA | Carroll, et al. v. JP Morgan Chase Bank |
| 14-cv-00503 | USDC, MD of LA | Carroll, et al. v. Abide (complaint against trustee for violation of the Carrolls' and Alonso's Fourth Amendment rights) |
| 15-1067 | USBC, MD of LA | Carrolls v. Abide (complaint for injunctive relief to stop auction of movables, "Injunctive Relief Adversary") |
| 15-cv-00508 | USDC, MD of LA | Carroll, et al. v. Abide (appeal of order denying stay pending appeal in Injunctive Relief Adversary) |

A detailed catalog of the mischief the Respondents either individually or collectively worked in the bankruptcy and related proceedings is unnecessary.  The point is best conveyed by focusing on the Respondents' two principal strategies: first, delaying the trustee's administration

of the estate through frivolous objections and appeals; and second, trying to remove the trustee when Respondents were unable to achieve the outcome they desired by directly opposing her.

*Notable Actions by the Respondents Demonstrating Pattern of Harassment*

The Carrolls spared no effort in their struggle to retain ownership of their home and the surrounding immovable property, as well as their extensive collection of personal property.

### (1) Filings Related to Sale of 5-Acre Tract

In September 2008, the trustee sought bankruptcy court permission to sell a five acre tract belonging to RedPen Properties, L.L.C. ("RedPen"), debtor in the consolidated case.[6] The bankruptcy court approved the sale for $1,500,000.00 over the Carrolls' objection.[7] In what later became a characteristic tactic, the Carrolls appealed the sale order (case number 08-cv-00788 in the listing on page 3 of this opinion) although they later dismissed their appeal.[8] The resulting delays in concluding the sale pushed the transaction into the time of the national financial crisis; it did not close. The property eventually sold at auction[9] two years later for $910,000.00, a loss of about $590,000.00 to the bankruptcy estate from the original sale price.

### (2) Filings Related to the Movables Adversary

Alonso and O'Neal sued the trustee and others in September 2009 for a declaration that they were the true owners of movables on the Carrolls' property as a result of a 2005 transfer

---

[6]  Motion to Sell Immovable Property to Third Party Free and Clear (P-38, Case No. 08-10933). The Carrolls transferred the property to RedPen – which they owned and controlled – on the eve of a sheriff's sale, then immediately filed chapter 11 for RedPen as part of a scheme to keep the property from creditors.

[7]  October 30, 2008 Order (P-46, Case No. 08-10933). The Carrolls and RedPen objected to the intended use of the property as a shopping center as a threat to the historic character of the parcel. They also urged that the sale price was inadequate because two years earlier the property appraised for $2.25 million.

[8]  Order on Motion to Dismiss Appeal (P-72, Case No. 08-cv-00788).

[9]  Order authorizing sale at auction (P-185, Case No. 08-10933) and Trustee's Report of Sale (P-213, Case No. 08-10933). The debtors (P-79, Case No. 08-10933) and Alonso (P-77, Case No. 08-10933) each separately objected to the employment of an auctioneer again delaying the sale of the property. The court denied both objections.

("Movables Adversary").[10]  Alonso and O'Neal based their claims on a donation *inter vivos* from

their parents, William and Carolyn Carroll, and a June 2005 act of exchange from RedPen to

Alonso and O'Neal ("Transfer Documents").[11]  Concerns about the effect of the ruling of the

United States Supreme Court in *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d.

475 (2011) prompted the bankruptcy court to order the parties to move to withdraw the lawsuits

to the United States District Court,[12] which withdrew the reference of the adversary proceedings

in December 2011.[13]

The district court eventually rendered judgment in favor of the trustee and declared that

the movables were property of the Carroll and RedPen bankruptcy estates[14] but not before

entertaining Ms. Abide's motions to compel and for contempt against the Carrolls, Alonso and

O'Neal.[15]  Not even the June 2013 ruling establishing the bankruptcy estates' ownership of the

---

[10]  See above,  p.4.  The 2005 date was significant: the trustee would be unable to use her avoiding powers to undo the transfers and recover the property for creditors had the Carrolls *actually* transferred the property to their daughters more than three years before the Carrolls' bankruptcy filing.  *See* 11 U.S.C. §§544(b),  La. Civil Code. art. 2025.

[11]  Exhibits to Complaint for Declaratory Action and Injunctive Relief (P-1 in Case No. 09-1096 and  09-1097).  It was not until September 6, 2011 that the debtors amended their schedule B, schedule C, summary of schedules and statement of financial affairs to add certain movables to their personal property, claim these as exempt and reflect that other movables that were the subject of the adversary proceedings belonged to Alonso and O'Neal (P-256, Case No. 08-10756).

[12]  September 20, 2011 Order (P-123, Consolidated Case Nos. 09-1096, 09-1097).

[13]  December 15, 2011 Order (P-9, Civ. No. 11-cv-702)

[14]  June 27, 2013 Ruling and Judgment (P-141, 142 Civ. No. 11-cv-702).

[15]  For example, though the Transfer Documents were already in the record of the adversary proceedings, the plaintiffs supplemented record in the district court with recorded copies of them in November 2011 (Supplement to Plaintiffs Objection to Trustee's Motion to Withdraw Reference , P-5, Civ. No. 11-cv-702.  The Transfer Documents were recorded on October 11, 2011). Then they supplemented the pre-trial order with an authorization for the transfers executed by RedPen, a document not attached to any previous copies of the Transfer Documents (March 6, 2012 Supplement to Pretrial Order, pp.52-53, P-33, Civ. No. 11-cv-702).  As a result of this sudden appearance of the RedPen authorization, the district court issued an order for the plaintiff to "produce to the trustee by 5:00 p.m. on March 8, 2012, all of the original documents, records, computer disks, financial, and legal folders of RedPen LLC from its inception until this date. The production shall include the original and any copies of these documents. To the extent any of RedPen LLC's documents shall be in the custody of any attorney, certified public accountant or other person, the plaintiffs shall request these parties to produce the documents to the trustee by 5:00 p.m. on

movables, and rejecting Alonso and O'Neal's claims of a pre-bankruptcy donation, curtailed the Respondents' mischief: in July 2013[16] the trustee had to move to have the Respondents held in contempt for disposing of or removing the movables at issue in the lawsuit in violation of a March 1, 2012[17] order.

The Respondents eventually exhausted the district court's patience: it held the Carrolls, Alonso and O'Neal in contempt for violating an April 27, 2012 order directing them to produce documents (see footnote 15).  The court imposed as sanctions all costs related to the motions to compel production and also ordered the Carrolls to vacate the residence.[18]  In response to that order, the Respondents:

(1) unsuccessfully moved for a stay pending appeal of the contempt and sanctions order, the order to vacate and the June 27, 2013 judgment (all of which the Fifth Circuit later affirmed);

(2) unsuccessfully moved to vacate the August 13, 2013 contempt order;

(3) provoked the trustee to move a second time for contempt when the Respondents failed to obey the August 13, 2013 order for production and to vacate the residence;

(4) unsuccessfully moved to strike the second motion for contempt;

(5) unsuccessfully moved for relief from the sanctions; and

---

March 8, 2012." (March 7, 2012 Order, P-35, Civ. No. 11-cv-702.)  After a further turnover order (April 27, 2012 Order, P-49, Civ. No. 11-cv-702), the trustee finally received files from two of the plaintiffs' attorneys.  However, the trustee had to file a motion for contempt when the Respondents failed to fully produce documents in compliance with the court's order (July 2, 2012 Motion for Contempt, P-75, Civ. No. 11-cv-702).

[16]  July 26, 2013 Motion for Contempt (P-151, Civ. No. 11-cv-702).

[17]  March 1, 2012 Order (P-32, Civ. No. 11-cv-702).

[18]  August 12, 2013 Minute Entry; August 13, 2013 Order (P-163, 164, Civ. No. 11-cv-702).

(6) triggered still another motion for contempt when they failed to pay the monetary

sanctions to the trustee.[19]

### (3) Filings Related to Sale of the Carrolls' Residence

In March 2011, the trustee moved to compel the debtors to vacate their residence so that

the property could be shown to prospective purchasers and to enable the trustee to inventory the

personal property.  The bankruptcy court allowed the Carrolls to remain in the house subject to

paying insurance and real estate taxes but ordered them to vacate the premises within five days

after entry of an order approving the property's sale.  It also ordered them not to interfere with

the viewing of the house or its inspection and to make the movable property available for

inspection and inventory.[20]  The debtors again appealed[21] without obtaining a stay so the court

took up the trustee's motion to sell the residence on August 26, 2011.  The court approved the

sale over the Carrolls' objections (one of which was that the property could not lawfully be sold

because a private cemetery was situated on it).[22]

The Carrolls' predictable appeal ensued along with a motion in the bankruptcy court to

stay its ruling pending appeal and a motion for leave to file a motion to reconsider the sale

---

[19]  August 15, 2013 Motions for Stay Pending Appeal (P-160, 161 and 162, Civ. No.11-cv-702); August 21, 2013 Order denying motions for stay pending appeal (P-170, Civ. No. 11-cv-702); Order of Fifth Circuit denying motions to stay pending appeal (P-171, Civ. No. 11-cv-702); September 9, 2013 Motion to Vacate (P-172, Civ. No. 11-cv-702); Order denying motion to vacate (P-179, Civ. No. 11-cv-702); September 13, 2013 Second Motion for Contempt (P-176, Civ. No. 11-cv-702);  October 4, 2013 Motion to Strike (P-183, Civ. No. 11/cv/702);  Order denying motion to strike (P-198, Civ. No. 11-cv-702); October 31, 2013 Request for Relief from Sanctions (P-185, Civ. No. 11-cv-702); November 13, 2013 Order denying request for relief from sanctions (P-191, Civ. No. 11-cv-702); November 21, 2013 Motion for Finding of Civil and Criminal Contempt (P-196, Civ. No. 11-cv1702).  The Carrolls, Alonso and O'Neal had, as of March 12, 2015, still not fully paid the sanctions.

[20]  March 15, 2011 Motion for Turnover and to Vacate Property (P-174, Case No. 08-10756;  May 6, 2011 Order Granting in Part and Denying in Part Trustee's Motion for Turnover and to Vacate Property (P-219, Case No. 08-10756).

[21]  May 13, 2011 Notice of Appeal (P-221, Case No. 08-10756).

[22]  August 26, 2011 Order (P-253, Case No. 08-10756).

order.[23]  The court denied both motions.[24]  The sale was set for October 7, 2011 and on

October 4, 2011, the debtors attempted unsuccessfully to postpone the sale in order to seek a

district court stay pending appeal.[25]  The residence was sold at an auction held in open court on

October 7, 2011.  The Carrolls then unsuccessfully moved to void the sale contending the

property could not be sold free and clear of liens because (1) there was a "historic cemetery on

the property" and (2) there was little equity for the estate so the trustee should have abandoned

the property.[26]

The Carrolls' frivolous opposition to the trustee's efforts to sell the Carroll residential

property both complicated and delayed the sale, generating nearly 100 pleadings in this court and

two unsuccessful appeals on what is typically a routine task in a bankruptcy trustee's

administration of estate assets.[27]

### (4) Filings Related to Sale of Movables

The trustee in August 2014 moved to sell the movables that the district court declared to

be property of the Carroll/RedPen estates in the Movables Adversary.[28]  The trustee's motion

---

[23]  September 6, 2011 Notice of Appeal (P-258, Case No. 08-10756);  September 12, 2011 Motion for Stay Pending Appeal (P-262, Case No. 08-10756); September16, 2011 Motion for Leave (P-270, Case. No. 08-10756).

[24]  September 22, 2011 Order (P-283, Case No. 08-10756);  September 23, 2011 Order (P-289, Case No. 08-10756).

[25]  Motion to Postpone Sale (P-322, Case No. 08-10756); October 4, 2011 Order denying postponement of sale (P-324, Case No. 08-10756).

[26]  October 7, 2011 Minute Entry memorializing sale of property (P-336, Case No. 08-10756);  October 12, 2011 Motion for Court to Void Sale (P-338, Case No. 08-10756);  October 12, 2011 Order denying motion to void sale (P-342, Case No. 08-10756).

[27]  The district court dismissed the debtors' appeal of the order compelling them to turn over and vacate the residence after the debtors filed a motion to withdraw the appeal.  July 18, 2011 Order (P-4, Civ. No. 11-cv-437).  The district court dismissed the Carrolls' appeal of the sale order for lack of standing, affirmed this court's ruling approving the sale and further ordered the debtors to vacate the residence property by January 12, 2012.  November 28, 2011 Judgment (P-30, Civ. No. 11-cv-684).

[28]  August 12, 2014 Motion for Sale Free and Clear of Liens Via Private Sale or Public Auction (P-524, Case no. 08-10756).

recognized that because the court had not ruled on the Carrolls' claim of exemption on the various movables that they previously had claimed to have given their daughters, any items that were declared exempt would not be the subject of the sale.  The court approved over the Carrolls' objection the anticipated sale procedure, as well as the trustee's hiring of an auctioneer and an appraiser for the movables.[29]  Before the hearing on the sale motion, the debtors moved to compel the trustee to abandon the movables, alleging that they were of little or no value to the estate.[30]  The court denied that motion, another of the Carrolls' many ploys to try to thwart the administration of the estate.[31]

(5) <u>The Carrolls Twice Sought to Have the Trustee Removed from their Bankruptcy</u>

Meeting with no success in their efforts to prevent the trustee from fulfilling her duties, the Carrolls turned their efforts to removing the trustee.  The evidence substantiated the frivolous and vexatious nature of the Carrolls' efforts and forced the trustee to incur substantial administrative costs, all of which are borne by the bankruptcy estates.

(a) <u>Filings Related to First Motion to Remove Trustee</u>

Nothing in these consolidated cases more clearly betrays the Respondents' efforts as vexatious than their two attempts to remove Ms. Abide as the trustee.

---

[29]  September 19, 2014 Order approving sale and employment of auctioneer (P-572, Case No. 08-10756); September 19, 2014 Order approving employment of appraiser (P-571, Case No. 08-10756).

[30]  September 10, 2014 Motion to Abandon Property Pursuant to 11 U.S.C. §554 (P-548, Case No. 08-10756).

[31]  October 2, 2014 Order denying motion to compel abandonment (P-595, Case No. 08-10756).  The debtors' lack of standing, as well as failure to prove the property was of inconsequential value, was the basis for the denial. During the course of this case, the Carrolls have never shrunk from filing pleadings when they have no standing to do so.

In June 2010, the Carrolls' attorney withdrew from representing them as well as RedPen and any restraints on their tactics correspondingly loosened.[32]  After that the Carrolls began to file more documents in their personal bankruptcy and that at once became increasingly wide-ranging, venomous and less susceptible of corroboration.  Thus their March 2011 motion and amended motion to remove Ms. Abide as trustee rested on allegations that stretched back to the 2001 bankruptcy cases of Charis Hospital, L.L.C. ("Charis") and Charis Partial Hospital, Inc. (two entities owned by the debtors) and the 1998 bankruptcy of Stacy Calvaruso (the liquidator of Charis).[33]  Carolyn Carroll's testimony was the sole evidence offered in support of the Carrolls, which the court denied because none of the evidence remotely supported removing Ms. Abide as the trustee of their estate.[34]  The debtors eventually withdrew an appeal of the ruling.[35]

(b)  Filings Related to Second Motion to Remove Trustee

On September 10, 2014, the same day the Carrolls filed their motion to compel abandonment and their objection to the trustee's proposed sale of the movables, they also filed a second motion to remove Ms. Abide as trustee.[36]  The Carrolls' arguments for removal of the trustee largely tracked their arguments in the first motion to remove the trustee but this time

---

[32]  June 7, 2010 Motions to Withdraw as Counsel of Record and July 9, 2010 Orders allowing withdrawal (P-160, 163 in Case No. 08-10756; P-192, 208 in Case No. 18-10933).

[33]  March 9, 2011 Motion to Have Chapter 7 Trustee Removed and March 14, 2011 Amended Motion to Have Chapter 7 Trustee Removed  (P-166, 172, Case No. 08-107560.

[34]  April 19, 2011 Order (P-199, Case. No. 08-10756).  The court's oral ruling noted that the debtors filed their motion only after the trustee alerted them of her intent to sell the immovable property they occupied and the movables in it that were worthy of administration.  The timing of the Carrolls' motion, as well as their reurging complaints about events long past including a creditor's final nonappealable judgment cast doubt on the sincerity of their motion and undermined their credibility.

[35]  April 21, 2011 Notice of Appeal (P-205, Case No. 08-10756); withdrawal of appeal (July 5, 2011 Order, P-4, Civ. No. 11-cv-368).

[36]  September 10, 2014 Motion to Remove Trustee for Failure to Perform Fiduciary Duties, Misconduct and Gross Mismanagement of Affairs (P-548, Case No. 08-10756).  The Carrolls filed the same motion in the RedPen case before the consolidation (P-348, Case. No. 08-10933).

included claims that the trustee made allegedly false statements to the district court in the

Movables Adversary and had grossly mismanaged the estate by spending too much money on

professionals litigating the ownership of their movables they falsely claimed to have donated to

Alonso and O'Neal years before filing bankruptcy.  The court denied this second motion to

remove Ms. Abide[37] noting that in large part the relatively long time this case had taken to

proceed to the point of liquidation of assets was due not to any action or inaction of the trustee,

but primarily to the Respondents' many and baseless challenges to the trustee's actions.

### (6) Filings Related to Substantive Consolidation

In July 2014, the trustee moved to substantively consolidate the Carroll and RedPen

bankruptcy estates because the Carrolls had so entangled the two estates that the assets and

liabilities were virtually identical.[38]  The Carrolls alone opposed consolidation.[39]  In what had

come to be their preferred style of response to any request the trustee filed, the Carrolls'

opposition comprised unsupported and derogatory statements about the trustee, including

accusations that she engaged in "abuse and vicious behavior," and boasted that "the courts

always believe her and support her position, she always wins."[40]  The court ordered substantive

consolidation of the two bankruptcy estates.[41]  The Carrolls did not appeal the consolidation.

---

[37]  November 21, 2014 Judgment denying motion to remove trustee (P-633, Case No. 08-10756). The court gave oral reasons for the ruling at a November 21, 2014 hearing.  The ruling was in the form of a judgment because the trustee and the United States of America moved prior to the hearing for a judgment on partial findings under Fed. R. Bankr. Pro. 7052(c).

[38]  July 16, 2014 Motion to Consolidate (P-498, Case No. 08-10756).

[39]  The Carrolls in fact lacked standing to oppose the consolidation because under any scenario the bankruptcy was not going to yield sufficient funds to pay all allowed claims and thus would not result in a return of any funds to the debtors.  *See* 11 U.S.C. §726(a)(6).

[40]  July 29, 2014 Opposition to Trustee's Motion for Substantive Consolidation (P-504, pp. 6, 8, Case No. 08-10756).

[41]  October 31, 2014 Order substantively consolidating cases (P-614, Case No. 08-10756).

(7) <u>Filings Related to Objection to Exemptions and Injunction Request</u>

After Alonso and O'Neal lost their district court lawsuit to establish their ownership of the movables in the Carrolls' possession, the Carrolls in 2011, for the first time[42] and in an amazing display of chutzpah, claimed that the property was exempt under 11 U.S.C. '522(f).  A valid exemption claim would remove the property from the bankruptcy estate and deprive the creditors of its value.

In September 2011, the trustee objected to the debtors' amended exemptions for household furnishings not previously disclosed in their schedules.[43]  These household movables included many heirlooms and antiques at issue in Alonso and O'Neal's Movables Adversary.  At the trustee's request after she had examined the debtors at length under Fed. R. Bankr. P. 2004, the court ordered the Carrolls to amend their schedules B and C again to more accurately and specifically identify the number and nature of the household goods they claimed exempt.[44]  The court then took the trustee's objection under advisement at a February 10, 2012 hearing but delayed that ruling due to the ongoing district court litigation in the Movables Adversary.

On June 27, 2013, the district court granted summary judgment and held that the movables belonged to the Carroll and RedPen bankruptcy estates, without assigning ownership between the two estates.[45]  Undeterred by a district court ruling that might have chastened less

---

[42]  The Federal Rules of Bankruptcy Procedure require debtors to identify at the commencement of their bankruptcy cases property they claim is exempt under the Bankruptcy Code or other applicable law.  Fed. R. Bankr. P. 4003(a). The Carrolls did not list any of the property at issue in their daughters' lawsuits as their exempt property because they claimed not to own any of it by virtue of the donation the district court later concluded was a simulation.  The Carrolls amended their schedules to claim the exemption three years after they filed bankruptcy.

[43]  September 28, 2011 Objection to Property Claimed as Exempt by Debtors (P-296, Case No. 08-10756).

[44]  Minute Entry for January 6, 2012 hearing on trustee's objection to exemptions (P-399, Case No. 08-10756).

[45]  The ruling had no bearing on the exemption litigation because RedPen as a limited liability company was not entitled to any exemptions.  *See* 11 U.S.C. §522(b)(1).

brazen litigants, the Carrolls filed a Motion for Personal Effects asking the court for access to the vacated residence to retrieve personal items, and a Motion for Stay to prevent the trustee from selling any of the movables pending the Carrolls' appeal to the Fifth Circuit Court of Appeals.[46] Their Motion for Stay recited that the Carrolls had filed a complaint with the United States Trustee for Region V and the Executive Office of the United States Trustee against the trustee and her special counsel, Steven Lemoine.  Their complaint alleged that the pair committed illegal searches, intentionally violated the Federal Rules of Civil Procedure, violated federal bankruptcy trustee regulations, committed malfeasance in office, violated direct court orders, engaged in computer piracy, violated the Carrolls' federal right to privacy, violated HIPPA; and committed perjury and fraud in the public record.  They also contended that the trustee "has consistently and methodically deceived and manipulated both courts in an attempt to illegally obtain a Summary Judgment in the District Court and to the type of illicit behavior involved in that attempt …" and that "Ms. Abide and her Special Counsel have shown no respect or regard for the law, regulations, procedure, honesty and integrity along with the respect due the courts, our legal system and its participants."[47]  The court denied both the Motion for Personal Effects and the Motion to Stay but the Carrolls' scandalous allegations remain part of the public record.[48]

Following the Fifth Circuit's May 2014 affirmance of the district court's ruling in the Movables Adversary, the trustee brought before the bankruptcy court the Carrolls' exemption claims.[49]  The court sustained the trustee's objection to the exemptions after an evidentiary

---

[46]  September 3, 2013 Motion for Personal Effects (P-462, Case. No. 08-10756); September 3, 2013 Motion for Stay of Movables (P-464, Case No. 08-10756).

[47]  September 3, 2013 Motion to Stay, P-464, pp. 2-3.

[48]  September 6, 2013 Order denying Motion for Personal Effects (P-470, Case No. 08-10756); September 9, 2013 Order denying Motion to Stay (P-471, Case No. 08-10756).

[49]  July 31, 2014 Motion for Status Re: Pending Exemption Issue (P-520, Case No. 08-10756).

hearing.[50]  The Carrolls quickly moved for reconsideration[51] and the trustee moved to appoint an auctioneer and sell the movable property.[52]  The court later clarified its prior order as to certain personal items of the Carrolls but denied reconsideration as to the rest of the ruling regarding the claimed exemptions.  It also ordered the debtors to arrange for the retrieval of the exempt items from the property.[53]  The court then granted the trustee's sale motion and auctioneer appointment, overruling the Carrolls' objections.[54]  None of the Respondents appealed the order on the exemptions, the denial of the motion to reconsider or the order approving the sale.

On August 11, 2015, Ms. Abide noticed the sale for September 11, 12 and 13, 2015.[55]  However, the Carrolls on August 19, 2015 moved for a temporary restraining order to stop the sale, a little more than three weeks before the scheduled sale and almost three months after the order authorizing it.[56]  When the court did not issue a temporary restraining order the debtors moved for a preliminary injunction.[57]  The court denied the preliminary injunction and within minutes of the entry of the order denying the preliminary injunction, the Carrolls appealed and

---

[50]  March 30, 2015 Order sustaining objection (P-650, Case No. 08-10756).

[51]  April 13, 2015 Motion to Reconsider Order to Sustain Objection to Property Claimed as Exempt (P-653, Case No. 08-10756).

[52]  April 30, 2015 Motion to Sell Property Free and Clear of Liens and Application to Employ Auctioneer (P-670, Case No. 08-10756).

[53]  June 1, 2015 Order on motion to reconsider (P-686, Case No. 08-01756).  The Carrolls were allowed to keep their engagement and wedding rings, clothing and a 1997 Mercedes automobile and remove these items from the property, subject to the trustee's right to inspect anything removed from the premises.

[54]  June 1, 2015 Order approving sale and appointment of auctioneer (P-687, Case No. 08-10756).

[55]  August 11, 2015 Notice of Proposed Sale Free and Clear Through Public Auction (P-694, Case No. 08-10756).

[56]  August 19, 2015 Complaint for Relief Requesting a Temporary Restraining Order (P-1, Adv. No. 15-1067).

[57]  August 31, 2015 Motion for Preliminary Injunction (P-13, Adv. No. 15-1067).

moved for a stay pending the appeal.[58]  This all took place two days before the first scheduled

day of the sale.  On September 10, 2015, the court issued an order and reasons denying the stay

pending appeal, and the Carrolls immediately sought a stay from the United States District

Court.[59]  The next day, the district court issued a ruling denying the Carrolls' request for stay

pending appeal and dismissed the appeal.[60]  The Carrolls elected to forego seeking a stay

pending appeal from the United States Fifth Circuit Court of Appeals and the sale took place as

scheduled.  On December 18, 2015, the debtors moved to dismiss the complaint seeking

injunctive relief.[61]

*Summary*

After years of trying to administer these consolidated bankruptcy cases in the face of the

Carrolls' and their adult daughters' contrived arguments, misleading motions and dishonest

filings, Ms. Abide now asks the court to bar the Respondents from further filings.  The trustee's

motion comes late, given the sunset of the consolidated Carroll/RedPen cases.  However, it

remains ripe because of the estate assets diverted to managing the Respondents' relentless efforts

to thwart the trustee's discharge of her duties.

---

[58]  September 9, 2015 Order Denying Preliminary Injunction (P-32, Adv. No. 15-1067) entered at 9:11 a.m.  At 9:15 a.m. the debtors filed a notice of appeal (P-33, Adv. No. 15-1067) and at 9:17 a.m. they filed an expedited Request for Stay Pending Appeal (P-34, Adv. No. 15-1067).

[59]  September 10, 2015 Order and Reasons Denying Motion for Stay Pending Appeal of Order Denying Plaintiffs' Motion for Preliminary Injunction (P-36, Adv. No. 15-1067);  Expedited Request for Stay Pending Appeal Pursuant to Bankruptcy Rule 8007 (P-2, Civ. No. 15-cv-508 M.D.La.).

[60]  September 11, 2015 Ruling and Order on Plaintiffs' Appeal from Order of Bankruptcy Court (P-4, Civ. No. 15-cv-508).

[61]  December 18, 2015 Motion to Dismiss or in the Alternative Motion for Continuance (P-47, Adv. No. 15-1067); December 21, 2015 Order dismissing case (P-49, Adv. No. 15-1067).

### Analysis

*The Trustee's Request to Bar the Carrolls, Alonso and O'Neal
from Future Filings is an Appropriate Use of the Court's Inherent Power
Under 28 U.S.C. §1651 and 11 U.S.C. §105*

The Trustee seeks a declaration that the Carrolls, Pam Alonso and Cynthia O'Neal are vexatious litigants and in consequence, to enjoin them and anyone acting on their behalf from filing, absent prior court approval, further pleadings or documents against Ms. Abide, individually or as trustee of the Carroll/Redpen estates or any entity owned by or affiliated with the Carrolls, in any judicial or non-judicial forum. The evidence has established the trustee's right to the relief she seeks albeit with some modification.

Federal courts have inherent power to impose sanctions "to achieve the orderly and expeditious disposition of their dockets." *Scaife v. Associated Air Cir, Inc.*, 100 F.3d 406, 411 (5th Cir. 1996), citing *Chambers v. NASCO, Inc.* 5-1 U.S. 32, 43 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This authority includes imposing sanctions on vexatious litigants, even those acting *pro se*, for raising frivolous legal arguments or continuing to pursue litigation that is without merit. *See Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) ("That his filings are *pro se* offers Farguson no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets"). The threshold for using the court's inherent power to impose sanctions is high. Those powers must be exercised only when essential to preserve the court's authority and even then, tailored narrowly to protect the parties while achieving the desired result. *Scaife*, 100 F.3d at 411.

The All Writs Act, 28 U.S.C. §1651,[62] gives federal courts authority to enjoin vexatious litigants from filing future court actions without prior permission of the court.  *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002).  The Fifth Circuit in *Newby* noted its prior opinion that "upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents."  *Id*. at 301-302, citing *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980).

Bankruptcy courts have noted that 11 U.S.C. §105(a), which empowers the bankruptcy courts to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title … or to prevent an abuse of process," is an "intentionally broad grant of authority" to bankruptcy courts "in order to facilitate the orderly administration of bankruptcy cases."  *In re Howell*, 4 B.R. 102, 105 (Bankr. M.D. Tenn. 1980).  The *Howell* court even suggested that "[t]he power contained in §105 is arguably more extensive that that contained in [the] All Writs Statute, 28 U.S.C. §1651."  *Id*.  *See also In re Meltzer*, 535 B.R. 803, 821 (Bankr. N.D. Ill. 2015) *quoting In re Volpert,* 110 F.3d 494, 500 (7th Cir. 1997) (after noting that federal courts have the power to protect their dockets from abusive litigants, concluding that "[b]ankruptcy courts are granted that same authority in section 105(a) of the Bankruptcy Code … which confers 'broad powers … to prevent an abuse of the bankruptcy process' ").

Given that the court has the power to enjoin actions abusing the bankruptcy process, the next issue is whether it should exercise that power.  A bankruptcy court must weigh several factors to decide whether to impose a pre-filing injunction to deter a vexatious filer:

---

[62]  28 U.S.C. §1651 provides: (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits;

(2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass;

(3) the extent of the burden on the courts and other parties resulting from the party's filings; and

(4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, L.L.C.*, 513 F.3d 181, 189 (5th Cir. 2008). Bankruptcy courts that have concluded that litigants before them fulfil these factors have enjoined those litigants from future filings. *Alkasabi v. Rampart Acquisition Corp., L.L.C.*, 2011 WL 1232341 at *9-10 (S. D. Texas March 31, 2011) (affirming bankruptcy court's ruling permanently barring debtor from filing any future litigation against defendants in that court); *In re Meltzer,* 535 B.R. 803, 824 (Bankr. N.D. Ill. 2015) (barring the petitioning creditors in an involuntary case from filing any new document in the bankruptcy court without prior leave of court); In *re Beard*, 2008 WL 2074082 at *6 (Bankr. N.D. Texas May 14, 2008) (enjoining debtor or any entity acting for him from instituting any action or proceeding in the bankruptcy court or district court in the Fifth Circuit).[63]

The trustee has established *all* the *Baum* factors. The Carrolls since 2001 have been involved in litigation in this court individually or in connection with the Charis and Charis Partial bankruptcies and multiple adversary proceedings. In the more than seven years since the Carrolls filed this case and the RedPen case, their family's collective purpose has been to place as many assets as possible out of the reach of the trustee and their legitimate creditors.

---

[63] The district court for the Northern District of Texas adopted in large part the *Beard* bankruptcy court's proposed findings of fact and conclusions of law, modifying them to bar the debtor from future filings but only in the bankruptcy and district courts in the Northern District of Texas. *In re Beard*, 2008 WL 2620100 (N.D. Texas June 23, 2009).

After Ms. Abide began to administer estate assets in these consolidated cases, the Carrolls' stepped up their pattern of filing numerous – usually non-meritorious, often repetitive – motions and other documents to delay or thwart the trustee's efforts to collect and liquidate assets.  The personal attacks on and harassment of Ms. Abide accelerated with the filing of the Movables Adversary and its course in the district court.  They grew especially venomous in the two motions to remove the trustee and the complaint the Carrolls filed with the Office of the United States Trustee.

The timing of the motions and the complaint itself revealed the Carrolls' true motives: to harass the trustee and thereby delay the proper administration of the estate in the hope that they would be able to retain their assets, or make pursuit of the assets so unappealing that the trustee would be compelled to settle on terms favorable to the Respondents.  Thus, the debtors filed the first removal motion after Ms. Abide informed them of her intent to sell their residence.  The second came after she moved to sell the movables following the Fifth Circuit's affirmance of the district court ruling establishing the estates' ownership of the movable property.  Finally, the Carrolls filed their complaint with the United States Trustee at the same time they moved to stay the sale of the movables pending that Fifth Circuit appeal.  The Carrolls' irrelevant and unsubstantiated allegations in the removal motions and the complaint betray the filings as nothing more than unscrupulous and deceitful efforts designed solely to harass the trustee to the detriment of the estates' creditors.

The litany of the Respondents' filings highlight as nothing else the extent of the burden on the trustee, other parties and the court that arose from the Respondents' misconduct.  This consumer bankruptcy has been pending for almost eight years and has generated 745 docket entries, many associated with documents filed by the Respondents or in response to their filings.

Finally, the Respondents' failure to pay in full the district court's contempt sanctions demonstrates that monetary sanctions alone will not deter them.  Barring them from further filings is essential to protect the court and other parties from abusive litigation.

William and Carolyn Carroll, Pamela Alonso and Cynthia O'Neal are vexatious litigants and bad faith filers.  The court will enjoin them and anyone acting on their behalf from filing any pleading or document in this case or its associated cases or adversary proceedings, and from filing any future cases in this court, without first obtaining bankruptcy court permission.

*The Trustee's Request for Monetary Sanctions*
*Against the Carrolls Under 11 U.S.C. §105 is Warranted*

The trustee also asks for monetary sanctions against the Carrolls, Alonso and O'Neal for their vexatious and abusive conduct.

The Fifth Circuit recognizes that 11 U.S.C. §105 allows a bankruptcy court to impose sanctions to prevent abuse of process.  In *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir.1997) the court stated "[w] conclude that a bankruptcy court can issue any order … necessary or appropriate to carry out the provisions of the bankruptcy code."  The Fifth Circuit more recently held in *In re Tucker*, 224 F.3d 766 at *3 (5th Cir. June 28, 2000) (unpublished opinion), that section 105 empowers a bankruptcy court to "take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  *Tucker* affirmed the annulment of a contumacious creditor's security interest.  The Seventh, Ninth and Tenth Circuits have reached the same conclusion and specifically approve monetary sanctions for vexatious, abusive and bad faith filings.  *See Volpert*, 110 F.3d at 500 (affirming monetary sanctions against attorney under section 105 for "unreasonably and vexatiously" multiplying the proceedings); *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284-5 (9th Cir. 1996) (approving bankruptcy court's monetary

sanctions against the debtor's shareholder for "orchestrating" the bad faith bankruptcy filing of the debtor); and *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (affirming bankruptcy court's decision, upheld by the district court, to impose monetary sanctions on debtor's president for filing bad faith bankruptcy petition).

Although almost all of the Respondents' actions described in this opinion were abusive, harassing or in bad faith, the Carrolls' actions associated with the two trustee removal motions and the complaint to enjoin the auction of the movables were the most egregious and so merit monetary sanctions under 11 U.S.C. §105.

The bankruptcy estates incurred $49,432 in attorneys' fees for Ms. Abide's services as attorney for the estate and for Lemoine's as special counsel for the estate in defending the trustee removal motions and the injunction complaint, along with the Carrolls' motion for stay pending appeal.[64]  The court imposes sanctions in that amount against William and Carolyn Carroll payable to Samera Abide as trustee for the consolidated bankruptcy estates of William and Carolyn Carroll and RedPen Properties, L.L.C.

Baton Rouge, Louisiana, March 16, 2016.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[64]  The court approved Ms. Abide's appointment as attorney for the estate on September 30, 2008 in the Carrolls' case (P-78, Case No. 08-10756) and on July 24, 2008 in the Redpen case (P-18, Case No. 08-10933).  Mr. Lemoine was employed as special counsel for both estates on October 30, 2009 (P-147 in Case No. 08-10756 and P-133 in Case No. 08-10933).  The court granted fee applications for Ms. Abide and Mr. Lemoine that included the fees incurred in the defense of the actions cited above on October 29, 2015 (P-731 and P-732 in Case No. 08-10756).